ON THE CHEAP, LLC, a California Corporation, Plaintiff(s),

v.

DOES 1–5011, Defendant(s).

No. C10–4472 BZ.

United States District Court, N.D. California.

Sept. 6, 2011.

---

Ira M. Siegel, Law Offices of Ira M. Siegel, Beverly Hills, CA, for Plaintiff.

**ORDER SEVERING DOE
DEFENDANTS 1–16
AND 18–5011**

BERNARD ZIMMERMAN, United States Magistrate Judge.

Plaintiff's complaint, filed on October 4, 2010 and amended on January 25, 2011, alleges that Doe defendants 1–5011 are liable for copyright infringement because they used BitTorrent software to illegally download or distribute the same adult film, entitled "Danielle Staub Raw." Docket Nos. 1 and 7.[1] On

---

1. Plaintiff has reached a settlement with about 70 Doe defendants and dismissed them with prej-

January 25, 2011, plaintiff moved for an order granting expedited discovery to allow it to serve subpoenas on defendants' internet service providers (ISPs) so it could learn the identity of each Doe and serve the summons and complaint. Docket No. 6. On February 3, 2011, I granted plaintiff's motion. Docket No. 10. In the ensuing months, multiple defendants filed motions to quash those subpoenas, raising issues such as innocence, lack of personal jurisdiction, improper joinder, and improper venue. A check of the Court's docket disclosed that no defendant had appeared and no proof of service had been filed. At the same time, I became aware of an outbreak of similar litigation in this District and around the country, and of the concerns raised by some of the judges presiding over these cases. I therefore ordered plaintiff to show cause why this matter should not be dismissed for misjoinder and improper venue and scheduled a hearing for August 24. Docket No. 37. Having reviewed plaintiff's response to the order to show cause as well as an amicus brief filed by the Electronic Frontier Foundation, and having considered the arguments of counsel, I find that the almost 5000 remaining Doe defendants are improperly joined for the reasons explained below.[2]

FRCP 20(a)(2) allows a plaintiff to join multiple defendants in one action if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Even if these conditions are met, joinder is not mandatory and the Court may order separate trials to protect any party against embarrassment, delay, expense, or other prejudice. FRCP 20(b). The Court is permitted to sever improperly joined parties at any time, as long as the severance is on just terms and the entire action is not dismissed outright. FRCP 21. A decision to sever may be made on the Court's own motion or on a party's motion. *Id.*

Many courts, including several from this District, have already addressed how the joinder rules apply to lawsuits against Doe defendants who are alleged to have acted in concert by using BitTorrent or other similar peer-to-peer (P2P) software to infringe copyright laws. Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence. *See, e.g., IO Group, Inc. v. Does 1–435*, Case No. 10–4382–SI, 2011 WL 445043 (N.D.Cal. Feb. 3, 2011); *Diabolic Video Productions, Inc. v. Does 1–2099*, Case No. 10–5865–PSG, 2011 WL 3100404 (N.D.Cal. May 31, 2011); *Pacific Century Int'l, Ltd. v. Does 1–101*, Case No. 11–2533–DMR, 2011 WL 2690142 (N.D.Cal. July 8, 2011); *Boy Racer v. Does 2–52*, Case No. 11–2834–LHK (PSG) (N.D.Cal. Aug. 5, 2011); *MCGIP, LLC v. Does 1–149*, Case No. 11–2331–LB, 2011 WL 3607666 (N.D.Cal. Aug. 15, 2011); *Hard Drive Productions, Inc. v. Does 1–188*, Case No. 11–1566–JCS, 809 F.Supp.2d 1150, 2011 WL 3740473 (N.D.Cal. Aug. 23, 2011).[3] I agree with the

---

udice from this action. *See* Docket Nos. 13, 14, 44 and 45.

**2.** Plaintiff has consented to this Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c). Docket No. 5. No defendant has been served. *See Ornelas v. De Frantz*, 2000 WL 973684 at *2 (N.D.Cal. June 29, 2000)("The court does not require the consent of defendants in order to dismiss this action because defendants have not been served, and, as a result, are not parties under the meaning of 28 U.S.C. § 636(c)").

**3.** Other courts have ruled to the contrary in permitting plaintiffs to conduct early discovery to identify the Doe defendants and deferring the question of joinder and severance until after the Doe defendants are named and served. *See, e.g., Voltage Pictures, LLC v. Does 1–5,000*, 818 F.Supp.2d 28, 2011 WL 1807438 (D.D.C. May 12, 2011); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F.Supp.2d 332 (D.D.C.2011); *MCGIP, LLC v. Does 1–18*, Case No. 11–1495–EMC, 2011 WL 2181620 (N.D.Cal. June 2, 2011); *First Time Videos, LLC v. Does 1–500*, Case No. 10–6254–RC, —— F.Supp.2d ——, 2011 WL 3498227 (N.D.Ill. Aug. 9, 2011); *Millennium TGA, Inc. v.*

views expressed by these courts and find that plaintiff has not established that joinder would be proper under FRCP 20(a)(2) merely because defendants used BitTorrent to download the same film.[4]

[2–4] Even if plaintiff had satisfied FRCP 20(a)(2)'s conditions for joinder, I would still sever the Doe defendants based on my discretionary authority under FRCP 20(b) and FRCP 21. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296 (9th Cir.2000); *Wynn v. Nat'l Broad. Co., Inc.,* 234 F.Supp.2d 1067, 1078 (C.D.Cal.2002)("A determination on the question of joinder of parties lies within the discretion of the district court") (citations and quotations omitted). Since joinder is permissive in character, there is "no requirement that the parties must be joined," particularly where joinder would "confuse and complicate the issues for all parties involved" rather than make the resolution of the case more efficient. *Wynn,* 234 F.Supp.2d at 1078, 1088 (citing Wright, Miller & Kane, *Federal Practice and Procedure,* § 1652). In its joinder analysis, the Court is required to "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman,* 232 F.3d at 1296 (citations and internal quotations omitted).

Here, the joinder of about 5000 defendants will not promote judicial efficiency and will create significant case manageability issues. For instance, many of the Doe defendants will likely raise different factual and legal defenses.[5] This is apparent from the motions to quash that were filed. *Compare* Docket No. 23 (Doe 406 is a Virginia resident who claims to have never used BitTorrent), *with* Docket No. 19 (Doe T was an Oregon resident until he died in March 2010, according to his daughter). If I allow this matter to proceed with about 5000 defendants, it will create a logistical nightmare with hundreds if not thousands of defendants filing different motions, including dispositive motions, each raising unique factual and legal issues that will have to be analyzed one at a time. *See, e.g., Hard Drive Productions,* Case No. 11–1566–JCS at *19, 809 F.Supp.2d at 1164; *Boy Racer,* Case No. 11–2834–LHK (PSG) at *5. Because the large number of defendants with individual issues will create "scores of mini-trials involving different evidence and testimony" and complicate the issues for all those involved, it is more efficient to proceed with separate cases where there will be separate proceedings, including separate motion hearings and ADR efforts. *Hard Drive Productions,* Case No. 11–1566–JCS at *19, 809 F.Supp.2d at 1164; *see also IO Group, Inc.,* Case No. 10–4382–SI at *7 (noting that one factor weighing in favor of severance is that "since the claims against the different Defendants most likely will involve separate issues of fact and separate witnesses, different evidence, and different legal theories and defenses, which could lead to jury confusion, separate trials will be required for each Defendant")(quoting *Fonovisa, Inc. v. Does 1–9,* 2008 WL 919701 at *6 (W.D.Pa. Apr. 3, 2008)).

There are also case manageability problems. This Court has already struggled with the logistical issues associated with keeping the identities of the moving Doe defendants sealed so that their privacy rights are protected. Such procedural hurdles will only become more problematic as this case moves

---

*Does 1–21,* Case No. 11–2258–SC, 2011 WL 2976883 (N.D.Cal. July 22, 2011).

**4.** *Boy Racer's* analysis is particularly helpful. Case No. 11–2834–LHK (PSG) at *4–5. In *Boy Racer,* the Court was not persuaded by the copyright holder's argument, which plaintiff sets forth here, that all of the defendants were involved in the same transaction because each one of them joined the same "swarm" to download or distribute the copyrighted movie and were therefore acting in concert. *Id. Boy Racer* found that the large gap of time—six weeks—between the alleged infringing act of the first Doe and the last Doe showed that the defendants may not have been cooperating with each other. *Id.* The same is true for this case since Doe 1's infringing act allegedly happened on June 19, 2010 while Doe 5011's infringing act took place almost seven weeks later on August 6. *See* Docket No. 7, Ex. A.

**5.** The presence of different factual and legal defenses also cuts against plaintiff's argument under FRCP 20(a)(2)(B), which permits joinder only when "any question of law or fact common to all defendants will arise in the action." Obviously plaintiff did not believe there was sufficient commonality to allege a FRCP 23 defendant class.

forward. *See, e.g., Hard Drive Productions,* Case No. 11–1566–JCS at *19, 809 F.Supp.2d at 1164 (the Court and the defendants would have to serve each party with each filing, "a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers"). During argument, plaintiff could not explain how a FRCP 26(f) pretrial conference or a FRCP 16(b) case management conference would take place with 5000 defendants. No courtroom in this building can hold over 200 people, let alone 5000. Nor did plaintiff explain how discovery or trial will proceed with so many different parties. *See id.* (finding that 188 defendants will make discovery "unmanageable" and courtroom proceedings "unworkable"). At the hearing, plaintiff argued that these issues could be resolved by appointing a committee of lawyers to represent the defendants. Plaintiff did not provide any authority for this proposition or explain how this committee would be chosen or paid.

Additionally, I find that joinder would be inappropriate for this case because it would violate the "principles of fundamental fairness" and be prejudicial to the defendants. *Coleman,* 232 F.3d at 1296; *see also Hard Drive Productions,* Case No. 11–1566–JCS at *19, 809 F.Supp.2d at 1164. Plaintiff is located in Southern California. The majority of Doe defendants are located outside of Northern California. *See* Schoen Declaration at ¶ 41 (4232 out of 5011 defendants in this case are likely located outside California); Nicolini Declaration at ¶ 23 (plaintiff's supporting declaration concedes that only 1 out of 7 defendants were likely using a California IP address when the alleged infringing behavior occurred and only 1 out of 5 of these California IP addresses were likely from the Northern District of California). I reviewed the first hundred Does listed in the Schoen Declaration and only one appears to be a resi-

dent of this District. Most of the Californians appear to be residents of the Central District where plaintiff is located. Plaintiff, well aware of the difficulties out-of-state and out-of-district defendants would face if required to appear in San Francisco, has nonetheless sent them settlement demands which apparently inform them that they have been sued in this District. The defendants are left with a decision to either accept plaintiff's demand or incur significant expense to defend themselves in San Francisco or hire an attorney to do so. This does not comport with the "principles of fundamental fairness," and, along with the other prejudices highlighted earlier, compels me to exercise my discretion to sever each defendant but one.[6]

During argument, plaintiff admitted that it was not aware of any court which had permitted the joinder of 5000 defendants. Plaintiff's response to many of the concerns I expressed was to ask for more time to serve defendants and to decide how it wants to proceed. Plaintiff sought to justify this delay on the grounds that it had not yet learned the identity of every Doe. However, plaintiff never explained why it had not served the Does whose identity it knew months ago or why those Does should have to endure the uncertainty created by the possibility that they may have to defend this lawsuit in San Francisco during the additional months it takes for plaintiff to identify all 5000 defendants.

Plaintiff also never addressed how the litigation strategy it adopted is fair to any defendant. Knowing that most defendants were not from this District, plaintiff nonetheless asserted that venue was proper and omitted from the complaint any allegation that would support personal jurisdiction over any defendant. At the hearing, plaintiff suggested two approaches to personal jurisdic-

---

6. The Court's concerns are heightened by plaintiff's refusal to file under seal a copy of its settlement letter and related information about its settlement practices. The film sells for $19.95 on plaintiff's website. According to public reports, plaintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe defendant in settlement. If all this is correct, it raises questions of whether

this film was produced for commercial purposes or for purposes of generating litigation and settlements. Put another way, Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws "to promote the Progress of Science and useful Arts." If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts.

tion, neither of which I find tenable. First, plaintiff asserted that it had alleged a prima facie case of jurisdiction, sufficient to allow it to take jurisdictional discovery against the thousands of defendants who are not California residents. Since there are no jurisdictional allegations in the complaint, it is hard to see how plaintiff has made out a prima facie case and permitting it to take jurisdictional discovery from thousands of defendants whom it has no reason to believe have any connection with California would violate "principles of fundamental fairness."[7]

Plaintiff also asserted that by virtue of their "swarming" activity,[8] the out-of-state defendants have engaged in concerted activity with the California defendants. The problem with this theory is that since plaintiff could have filed this lawsuit in any state, the logical extension would be that everybody who used P2P software such as BitTorrent would subject themselves to jurisdiction in every state. This is a far cry from the requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," which is the hallmark of specific jurisdiction. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(quotations and citations omitted); *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801–802 (9th Cir.2004).

Even though plaintiff justified the need for expedited discovery so it could identify and serve Doe defendants (Docket No. 6), eleven months after the complaint was filed, not a single Doe has been served. Had that happened, the Court undoubtedly by now would have resolved some of the jurisdictional and venue issues this case presents in a concrete, adversarial fashion. Based on those rulings, some of the management problems discussed above might have been ameliorated. Instead, plaintiff appears to have used the information from the subpoena for a different purpose: to extract settlements from out-of-

state defendants by notifying them that they have been sued in California, knowing that it is highly unlikely that many of them will be amenable to suit in California.

■ One final concern: it does not appear that plaintiff has served any of the defendants within 120 days of learning their identities earlier this year. Asked at the hearing why the case should not be dismissed for failing to comply with FRCP 4(m), plaintiff orally requested an extension of time to serve, but did not show good cause for its failure. Its request is **DENIED.** Courts have dismissed similar copyright infringement lawsuits where plaintiffs did not effect service within 120 days from the filing of the complaint. *See, e.g., CP Prods., Inc. v. Does 1–300,* 2011 WL 737761 at *1 (N.D.Ill. Feb. 24, 2011).

This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating. *See IO Group,* Case No. 10–4382–SI at *9 ("Plaintiff's motive for seeking joinder, therefore, is to keep its own litigation costs down in hopes that defendants will accept a low initial settlement demand. However, filing one mass action in order to identify hundreds of Doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for.")

Were plaintiff truly desirous of enforcing its copyright in fair fashion, it has options available. For example, had it filed a lawsuit in each of the four districts in California, at a cost of three additional filing fees, it would have eliminated many of the venue and juris-

---

**7.** Without ruling on the issues of jurisdiction and venue, I note that they have troubled other courts. *See, e.g., CP Prods., Inc. v. Does 1–300,* 2011 WL 737761 (N.D.Ill. Feb. 24, 2011); *Nu Image, Inc. v. Does 1–23322,* 799 F.Supp.2d 34, 2011 WL 3240562 (D.D.C. July 29, 2011).

**8.** A "swarm" is a group of BitTorrent users involved in downloading or distributing a particular file. *See Diabolic Video Productions,* Case No. 10–5865–PSG at *2 (defining "swarm" and explaining how the BitTorrent software operates).

dictional problems discussed above and could have properly asserted to many Doe defendants that they were being sued in a district in which jurisdiction and venue would lie. Whether that would have mitigated the other joinder and management issues discussed earlier is less clear.[9]

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Doe defendants are improperly joined. **IT IS FURTHER ORDERED** as follows:

1. All defendants except for Doe 17 are hereby **SEVERED** from this action and dismissed without prejudice.[10]

2. By **September 20, 2011,** plaintiff shall notify, by first-class mail, every Doe defendant for whom it has or obtains an address, that all defendants except Doe 17 have been severed and dismissed from this action. The notice shall include a copy of this Order. By **September 23, 2011,** plaintiff's counsel shall file a declaration attesting that plaintiff has complied with this provision, and attaching a copy of the notice plaintiff has sent to the Does.

3. Plaintiff shall have until **October 7, 2011** to amend its complaint and serve Doe 17, if it wishes to proceed with its claims against this defendant. The case management conference, currently set for September 26, 2011, is continued to **December 13, 2011 at 4:00 p.m.** in **Courtroom C,** 15th Floor, Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102.

---

9. Plaintiff remains free to pursue its copyright infringement claims against each individual Doe defendant.

10. Doe 17 remains as the lone defendant rather than Doe 1 because Doe 17 is the first defendant on plaintiff's list of IP addresses who appears to reside in the Northern District of California. *See* Schoen Declaration.